# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, as Trustee for the benefit of the registered holders of GS Mortgage Securities Trust 2021-GSA3, Commercial Mortgage Pass-Through Certificates, Series 2021-GSA3, acting through its special servicer Argentic Services Company LP, | § § § § § § § § | |
| *Plaintiff* | § § | CIVIL ACTION NO. |
| v. | § § | |
| JACK RAFIQ, | § § § | |
| *Defendant*. | § § | |

## COMPLAINT

Wilmington Trust, National Association, not in its individual capacity but solely in its capacity as Trustee for the benefit of the registered holders of GS Mortgage Securities Trust 2021-GSA3, Commercial Mortgage Pass-Through Certificates, Series 2021-GSA3 (the "***Lender***") and acting through its special servicer Argentic Services Company LP,[1] by its attorneys Reed Smith LLP, as and for its complaint against defendant Jack Rafiq ("***Guarantor***"), hereby alleges as follows:

## NATURE OF THE DISPUTE

1.     Lender brings this straightforward action to recover amounts it is indisputably owed pursuant to a Guaranty (as defined herein) executed by Guarantor, regarding a loan to JAX Properties LLC (the "***Borrower***") in the original principal amount of $7,150,000.  As a result of Borrower's bankruptcy filing, Rafiq is personally liable for all amounts due and owing.   Lender brings this action to recover the amounts it is owed, in addition to the attorneys' fees and costs to

---

[1]     Lender appears herein by and through Argentic Services Company LP (the "***Special Servicer***"), in its capacity as special servicer pursuant to that certain Pooling and Servicing Agreement dated December 1, 2021.

which it is contractually entitled.

2.     Guarantor has no defenses to the causes of action asserted in this Complaint. Accordingly, Lender is entitled to a judgment against Guarantor for the full amount of principal, interest, and attorneys' fees owed to Lender under the parties' Loan Documents (as defined herein).

## PARTIES

3.     Wilmington Trust, National Association, as Trustee of Lender, is a national banking association organized under the laws of the United States of America with its designated main office in Wilmington, Delaware.

4.     Defendant Jack Rafig is an individual residing in San Diego, California, and can be served with process at 636 C Street, San Diego, California 92101, or wherever else he might be found.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy (over $7 million), exclusive of interest and costs, exceeds $75,000.  Plaintiff is a citizen of the State of Delaware for purposes of diversity jurisdiction.  Guarantor is a citizen of the State of California for purposes of diversity jurisdiction.

6.     This Court has personal jurisdiction over Guarantor because the Guaranty at issue was negotiated in the State of New York and the funds delivered pursuant to the Loan Agreement were disbursed from the State of New York.  This Court also has personal jurisdiction over Guarantor because he irrevocably submitted to the jurisdiction of courts located in New York.

7.     Venue is proper pursuant to 28 U.S.C § 1391(b) because a substantial part of the events or omissions giving rise to Lender's claims occurred in this District and because Guarantor

irrevocably waived any objection he may have to the laying of venue in, and any defense of inconvenient forum of any proceeding brought in, a court of record in New York.

## FACTUAL BACKGROUND

8.      On or about December 1, 2021, Borrower executed that certain Promissory Note (the "***Note***"), payable to the order of ARGENTIC REAL ESTATE FINANCE LLC ("***Original Lender***"), in the original stated principal amount of $7,150,000 (the "***Loan***").  The Loan is further evidenced by that certain Loan Agreement between Defendant and Original Lender dated as of dated December 1, 2021 (the "***Loan Agreement***").

9.      The Note is secured by, among other instruments, (i) a Deed of Trust, Assignment of Leases and Rents, and Security Agreement (the "***Deed of Trust***"), dated December 1, 2021, and recorded in the real property records of San Diego County, California, as Document Number 2021-0820015, executed by Borrower for the benefit of Original Lender, and (ii) an Assignment of Leases and Rents (the "***ALR***"), dated December 1, 2021, and recorded in the real property records of San Diego County, California, as Document Number 2021-0820016, executed by Borrower for the benefit of Original Lender.

10.      The Deed of Trust covers the real and personal property more particularly described therein and located at 630 & 636 C Street, and 1130-1150 & 1152 7th Avenue, San Diego, California (as fully defined in the Deed of Trust, the "***Property***").

11.      On or about December 1, 2021, Guarantor executed that certain Guaranty of Non-Recourse Obligations (the "***Guaranty***") in favor of Original Lender.

12.      The Note, the Loan Agreement, the Deed of Trust, the ALR, the Guaranty, and all other documents and instruments securing or evidencing the Loan are hereinafter collectively referred to as the "***Loan Documents***."  Lender is the assignee of the Loan Documents by way of,

without limitation, (i) a series of allonges attached to the Note, (ii) a series of assignments of the Deed of Trust, and (iii) a series of assignments of the ALR.

13.     On June 6, 2022, Borrower failed to make its debt service payment pursuant to the Loan Agreement.  On June 22, 2022, Lender sent Borrower and Guarantor a Notice of Acceleration and Demand, based on Borrower's failure to pay its June 2022 Monthly Debt Service Payment Amount due on June 6, 2022.

14.     On May 25, 2022, the City of San Diego issued to Borrower a Notice and Order to Vacate and Repair Substandard Building, and Abate Public Nuisance ("***Notice and Order***").

15.     According to the Notice and Order, the City's Code Enforcement Division ("***CED***") conducted inspections on the Property on March 16, 2022 and April 27, 2022.  Lender had no knowledge of these inspections.

16.     The City of San Diego's Fire-Rescue Department also sent Borrower a letter, dated April 28, 2022, regarding the results of an April 27, 2022 inspection ("***Fire Inspection Letter***"). According to the Fire Inspection Letter, the inspection revealed multiple "Fire and/or Building Code violations" on the Property "that require correction."  Borrower was ordered to make the required corrections specified in the Fire Inspection Letter "before the date of the next inspection," or else risk "further enforcement action and penalties as provided by law," including non-compliance fees, misdemeanor criminal prosecution, civil injunction, administrative abatement, revocation of permits, recordation of Notice of Violation, or civil penalties.

17.     The subsequent Notice and Order stated that the structure and premises at the Property "are substandard and a public nuisance pursuant to California Health and Safety Code sections 17920.3, 17980, and 17980.6."  The Notice and Order further stated that "[t]he conditions and violations observed at the [Property] are so extensive and of such a nature that the structure

Case 1:22-cv-06177   Document 1   Filed 07/20/22   Page 5 of 9

and premises endanger the life, limb, health, property, safety or welfare of any occupants or the public." Indeed, the Notice and Order listed as violations inadequate sanitation, hazardous electrical conditions, and non-permitted building and electrical modifications, among others. The conditions and violations set forth in the Notice and Order constituted Events of Default under the Loan Documents executed by Borrower. The City ordered Borrower "to vacate and expeditiously repair the property and abate the public nuisance as specified in this Notice and Order." The Notice and Order includes a laundry list of no less than 30 issues, including, among other things:

    a.  "Visible sign of rodent infestation."

    b.  "Visible signs of dampness, moisture intrusion, and mold observed throughout the . . . interior spaces and the dwelling units."

    c.  "Lack of required adequate garbage and rubbish storage and removal facilities. Trash and rubbish are currently stored in the hallways and required paths of egress . . ."

    d.  "Lack of a required working and conforming heating system in multiple dwelling units."

    e.  ". . . unfinished drywall; openings in the exterior walls; dilapidated lighting and plumbing fixtures; and dilapidated exterior wall coverings."

    f.  "Unauthorized storage of compressed flammable gas cylinders"

    g.  "Extensive unpermitted and deficient electrical modifications observed completed and in process throughout the basement, interior spaces, and in the dwelling units."

    h.  "Extensive electrical hazards observed throughout the basement, interior spaces, and in the single room dwelling units. This includes electrical panels missing dead fronts (covers), junction boxes and outlets missing cover plates, lack of ground circuit interruption where required . . . lighting fixtures hanging from wires, uncovered electrical junction boxes installed within a shower enclosure . . ."

i.  "Extensive use of flexible electrical extension cords as substitute for permanent power."

18.     Lender did not receive a copy of the Notice and Order until Thursday, June 9, 2022.

19.     On June 27, 2022, Bruce Rickert, a representative of Lender, traveled to California to examine the condition of the Property.  In addition to observing the poor conditions, Mr. Rickert met with Guarantor.  Throughout the course of this meeting, Guarantor stated that he believed he could make such repairs cheaply, despite admitting that he had no experiences making such repairs and admitting that he had been making repairs unsuccessfully for a numbers of years. Guarantor also admitted he was unable to produce any books or records for the Property, including a current rent roll, profit and loss statement, or balance sheet.  Finally, Guarantor admitted that while he used Quickbooks, he was unable to provide accurate financial information.

20.     Based on the various Events of Default and the violations and conditions set forth in the Notice and Order and Mr. Rickert's visit to the Property, Lender took steps to exercise its rights as a secured lender to repair the Property and protect its collateral.  Namely, on June 27, 2022, Lender filed its *Ex Parte* Application for Appointment of a Receiver (the "***Receivership Application***") in the Superior Court of California, County of San Diego.[2]

21.     The hearing on the Receivership Application was set for 8:30 a.m. PT on June 29, 2022.  The night prior, on June 28, 2022, Borrower filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of California, Case No. 3:22-bk-01694-CL11 (the

---

[2] *Wilmington Trust, National Association, as Trustee for the benefit of the registered holders of GS Mortgage Securities Trust 2021-GSA3, Commercial Mortgage Pass-Through Certificates, Series 2021-GSA3 v. JAX Properties, LLC, et al.*, Case No. 37-2022-00024005-CU-BC-CTL before the Honorable John S. Meyer.

"***Bankruptcy Case***", which imposed the automatic stay and prevented the hearing on the Receivership Application from going forward.

22.     Section 2(a) of the Guaranty provides as follows:

(a) Guarantor hereby assumes liability as a primary obligor for, hereby unconditionally, absolutely, irrevocably guarantees payment to Lender of, and Guarantor shall be personally liable for, the complete and prompt payment of the Debt evidenced by the Note and the other Loan Documents (as defined in the Loan Agreement) when and as the same shall become due, whether at the stated maturity thereof, by acceleration demand or otherwise, and any and all interest accrued and to accrue on the Loan (including, without limitation, interest at the Default Rate), any late charges, attorneys' fees, costs, expenses and all other indebtedness, obligations and liabilities of Borrower with respect to the Loan as provided in the Loan Documents.

Guaranty, at § 2(a).   In addition, Section 3(a) provides that "Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Lender the full, prompt, and complete payment when due of the Guaranteed Obligations [as defined therein]."  Guaranty, at § 3(a).

23.     Pursuant to Section 10.1 of the Loan Agreement, the "Debt[3] shall be fully recourse to Borrower in the event that . . . (iii) Borrower or Sole Member files a voluntary petition under the Bankruptcy Code[.]"

24.     As a result of Borrower's filing of the Bankruptcy Case, Borrower and Guarantor are fully liable for all amounts due and owing under the Loan Documents.  As of July 19, 2022, the amount due and owing is not less than $7,698,041.64 consisting of principal in the sum of $7,103,649.54, plus interest, late fees, costs and attorneys' fees.

25.     All conditions precedent for enforcement of the Guaranty and other Loan Documents have occurred or have been waived.

---

[3] Section 1.1 of the Loan Agreement provided that "'***Debt***' shall mean the unpaid Principal, all interest accrued and unpaid thereon, and any Yield Maintenance Premium, all transaction costs, all late fees and all other sums due to Lender in respect of the Loan or under any Loan Document."

26.     Pursuant to the Guaranty, Guarantor has waived the right of trial by jury in any litigation, action or proceeding arising under or in connection with the Guaranty.

## COUNT I

### (Breach of the Guaranty)

27.     Lender repeats and realleges the allegations set forth in each of the preceding paragraph above as though fully set forth herein.

28.     The Guaranty is a valid and enforceable contract.

29.     Lender has fully performed all obligations imposed upon it by the Guaranty and other Loan Documents and is otherwise not in breach of those agreements.

30.     Pursuant to the terms of the Guaranty, Guarantor agreed to guarantee the full and unconditional payment when due of each every debt owed by Borrower under the Loan Documents.

31.     Despite these clear contractual requirements, Guarantor breached the Guaranty by failing to repay the Debt.

32.     As a direct and proximate cause of Guarantor's material breaches, Lender has been damaged in an amount to be determined at trial, but not less than $7,698,041.64 consisting of principal in the sum of $7,103,649.54, plus interest, late fees, costs and attorneys' fees owed under the Guaranty.


WHEREFORE, Lender requests that the Court enter a judgment in its favor and against Guarantor in the amount due under the Guaranty, the exact amount to be proven at or before trial but not less than the sum of $7,698,041.64 as of July 19, 2022, plus its attorneys' fees, costs, and

interest, which continue to accrue, together with such other and further relief as shall be just and equitable.

Dated: July 20, 2022

Respectfully submitted,

REED SMITH LLP

By: */s/ Christopher A. Lynch*
Christopher A. Lynch (CL 3290)
599 Lexington Avenue, 22nd Floor
New York, NY  10022
Tel. (212) 521-5400
Fax. (212) 521-5450
clynch@reedsmith.com

*Counsel for Plaintiff WILMINGTON TRUST, NATIONAL ASSOCIATION, as Trustee for the benefit of the registered holders of GS Mortgage Securities Trust 2021-GSA3, Commercial Mortgage Pass-Through Certificates, Series 2021-GSA3, acting through its special servicer Argentic Services Company LP,*